Guillermo Cortada et al., Petitioners and Appellees, *v.* The Municipality of Ponce et al., Respondents and Appellants.

No. 6473. Argued January 17, 1934.—Decided September 29, 1934.

R. *Rivera Zayas, Guillermo Pierluisi,* and *R. Atiles Moreu* for appellants. *José A. Poventud* and *Alberto S. Poventud* for Messrs. Cortada and Quilinchini; *F. Parra Capó* for Heirs of Serrallés and Mr. Toro; *Miguel Marcos Morales* for the Crédito and Ahorro Ponceño and *López de Tord* and *Zayas Pizarro* for the Banco de Ponce, appellees.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

The Municipal Assembly of Ponce passed ordinance No. 22, series of 1933, which was published in the newspaper "El Mundo", on May 13, 1933, the object of which was to cover a deficit in the ordinary income of the municipal budget. Exercising the special remedy authorized by Section 83 of the Municipal Law of 1928, the petitioners requested the District Court of Ponce to issue a writ of certiorari to obtain a review and the declaration of the nullity of the ordinance mentioned, on the ground that the same injured their rights and violated the Federal Constitution, the Organic Act of Puerto Rico and the Insular laws. The writ was issued by the District Court and respondents requested its nullity and presented a copy of Ordinance No. 25, series of 1933, approved by the Municipal Assembly of Ponce on June 6 of said year. This ordinance amends Sections 1, 2, 7, 9, and 10 of the original ordinance No. 22. The lower court, after the questions presented were fully argued, declared null Ordinances No. 22 and 25, series of 1933, approved by the Municipal Assembly of Ponce on April 28 and June 6, 1933. The ordinance imposes "a tax equivalent to 1% per annum on all capital represented by loans, promissory notes and other negotiable instruments or credits of every class, secured by a mortgage or other real or personal security, or unsecured,

provided the same are not exempted by law, or subject to a federal or insular excise tax, tax or impost, which capital thus represented or evidenced is in the legal possession or belongs in ownership or usufruct to any natural or juridical person domiciled within the jurisdiction of the territorial limits of the municipality of Ponce, or who has there an office for the purposes of doing business.''

 Three errors are attributed to the lower court. The first error assigned is that the petitions for a writ of certiorari were not verified by all the petitioners represented by the different attorneys.

It does not appear that the question referring to the verification made by two of the petitioners in the original petition and by one of them in the supplemental petition, was raised in the lower court. This question comes too late when raised for the first time on appeal. However, we wish to state that in our judgment, it is not necessary that all the parties interested in the issuance of the writ of certiorari verify separately the facts alleged in the same. As petitioners very well say, the law does not require useless acts. To comply with the object of the law it is enough to make a prima facie showing of the certainty of the facts alleged by means of an oath, and it is not necessary to require that each and all of the petitioners separately swear to the same allegations, incurring thereby in an unnecessary repetition. The error assigned does not exist.

 It is maintained that the petition in certiorari does not state sufficient facts to constitute a cause of action, and that the court erred in sustaining it and declaring the nullity of both municipal ordinances.

In accordance with the evidence offered the petitioners are the owners and holders of promissory notes, mortgage credits, negotiable instruments, and other additional credits subject to the tax imposed by the municipal ordinances. As we have seen these ordinances impose a tax on all capital represented by loans, debts or credits secured by mortgage

or other security real or personal, or unsecured. The first section of the ordinance as amended so provides. The second imposes a tax on all persons whether natural or juridical domiciled in the municipality of Ponce or who have in said city a business office, who own or have legal possession of any capital represented by promissory notes or other negotiable instruments, credits or loans of any kind, whether or not secured by mortgage, or any other security real or personal, not exempted from taxation, or subject to any insular or federal tax, impost, or excise tax.

The petitioners offer various reasons to establish the nullity of the municipal ordinance approved by the municipality of Ponce; but the main basis for this contention is that in accordance with Section 290 of the Political Code and the jurisprudence established up to date, the accounts, promissory notes, and credits, with or without security, are absolutely exempted from the payment of any tax and that in accordance with Section 46, subdivision (b) of the Municipal Law of 1928, no municipality can levy any tax on property exempted from taxation. Petitioners as well as defendants have prepared extensive and interesting briefs in support of their respective points of view. We will limit ourselves to discuss in this opinion the fundamental and basic question raised by petitioners, because as it is sufficient to decide this appeal, we should not study or consider the other points raised and argued by the distinguished attorneys representing the petitioners and the respondents. The lower court has written a careful opinion which we reproduce in part, as it contains a history of our laws referring to the question raised and because it constitutes, in our judgment, a correct interpretation of the law on the subject.

"Applying these provisions of the Municipal Law, let us consider the main question involved in this proceeding, that is, whether the personal credits of all kinds whether secured with mortgage or unsecured, are exempted from taxation in Puerto Rico as maintained.

by petitioners or if they are exempted from taxation only for insular purposes as to property taxes and subject to taxation by the municipalities under Section 46(f) *supra,* as maintained by respondents. We have studied carefully this interesting question as it has been extensively argued by the parties in their briefs, and we believe that in the brief of petitioners the jurisprudence of our Supreme Court and the Circuit Court of Boston is analyzed and compared, interpreting Section 290 of the Political Code in connection with Sections 291, 317, and 319 of the same legal body in a manner so clear, precise and convincing that we take the liberty to cite from their brief some paragraphs, with slight variations, as if they were our own.

"The Political Code of 1902 expressly included as property subject to taxation, "the credits and the debts." Section 290 of said legal body, in its pertinent part, provided:

" 'Personal property shall include credits . . . dues.'

"Section 291(c) of the same Code, exempted from taxation 'the indebtedness owed by any taxable person . . . to the extent and in the manner prescribed in Sections 296, and 297 of this Title.'

"By Section 297 of said Political Code, when the property is listed and valued for the purpose of taxation promissory notes and other *bona fide* debts could be deducted from the listed credits provided they do not exceed the amount of the latter, except in the case of a mortgage; and if no credit was listed, neither could the deduction be made.

"Section 298 of said Political Code of 1902, considered all mortgages 'as an interest in the property affected thereby,' and the property mortgaged was assessed after a deduction of the value of the mortgage or security.

"The mortgage creditor, according to the provisions of said section, paid no taxes on any debt so secured if by an erroneous clause in the contract the tax was to be paid by the debtor, who was then under obligation to make the payment. See the Political Code of 1902, Sections 290, 291(c); 297 and 298.

"By the amendment of March 10, 1904, (Sess. Laws, p. 169) said Section 290 of the Political Code, referring to the property subject to taxation, was modified with the following addition:

" ' . . . . but shall not include book-credits, promissory notes nor other personal credits.'

"The personal property subject to taxation was thus specified excluding book-credits, promissory notes, and other personal credits.

"It must be seen, hence, that until the year 1904, all kinds of personal credits were considered as personal property subject to assessment for purposes of taxation, and that from that year 1904, these credits were excluded and exempted from all tax.

"The mortgage credits, which were also assessed in the name of their owners until the year 1904, in accordance with Sections 297 and 298 of the Political Code of 1902, and were deducted from the value of the assessed property of the debtor, were also excluded from said legal provisions in harmony with the new definition of 'personal property.'

"The credits of all kinds, including of course, those secured by mortgage, are exempted since 1904 without any condition.

"Section 291(m) also expressly exempted from taxation certain class of bonds for they were included in the definition of 'personal property' found in Section 290 of the Political Code as amended in March 10, 1904, (Sess. Laws, p. 169).

"Likewise, referring to corporations, Section 317 of said Political Code of 1902 included 'in personal property all credits,' and by amendment by the laws of 1904 (Sess. Laws, p. 176) that part referring to credits of corporations as part of their personal property. (Comp. 1911, p. 559.)

"The case in which said question was first considered is the case of *Union Central Life Insurance Co.* v. *Gromer*, 19 P.R.R. 656, where it was clearly and finally decided:

" 'In accordance with the law in force in Porto Rico, the owner of a mortgaged property pays taxes on the total value of said property without deducting the amount of the mortgage, which for the purposes of taxation is the same as personal property. Under Section 290 of the Political Code as amended, personal credits are expressly exempt from taxation . . . . Sections 320 and 290 of the Political Code would be unconstitutional if construed in the sense that mortgage credits owned by a foreign corporation domiciled outside of Porto Rico are subject to taxation when the same credits are exempt if owned by an individual . . . The plaintiff corporation having paid under protest the taxes assessed by the Treasurer of Porto Rico on the mortgage credits owned in this Island, the amount thereof should be refunded to said corporation . . . It cannot be denied that, under Section 290 of the Political Code, credits belonging to individuals are exempt from taxation . . .'

"The case cited was followed by that of *Fajardo Sugar Co.* v. *Richardson, Treasurer of Porto Rico*, 22 P.R.R. 290, where after rat-

ifying the doctrine established in the case of *Union Central Life Insurance Co.* v. *Gromer, Treasurer*, it was declared:

" 'The appellant, in spite of the case of the *Union Central Life Insurance Company* v. *Gromer, supra*, insists that the credits are not exempted by the law. He maintains that the Attorney General of Porto Rico, Mr. Brown, and this court in following his opinion were mistaken. The argument is that Section 290 merely says that credits should be exempted from their classification under the head of personal property, but that credits are nevertheless taxable because Section 290 provides that all property shall be taxed. The appellant points out that by the law of 1902 credits were also taxed and that the only revision that the law of 1904 made was to exclude them from their classification under personal property. Generally, however,—and it has been so held by the courts,—personal property would include credits, and when Section 290 specifically excludes such credits we must take it for granted that the Legislature intended what it said. The Legislature, seeing that all physical property is taxed, may have desired to avoid a taxation of claims on that property to avoid duplicate taxation which so frequently falls on the borrower himself instead of on the person holding the credit. The case of the *Union Life Insurance Company* v. *Gromer* has never been overruled and does not depend solely on the opinion of the Attorney General Brown, but on a reasoned consideration of the statute. But whether the exclusion of credits in Section 290 be considered as an exemption or an exception to taxation, the intention of the Legislature as revealed by that Section is not to be mistaken. The intention to exclude is further displayed by the changes made in 1904 in other parts of the Political Code. In Sections 317 and 319 of that code, requiring corporations to make returns of their personal property, the word "credits" was included in 1902 and omitted in 1904, the date at which Section 290 was amended. And Section 290 itself says that for the purposes of taxation real property should include certain things and personal property certain others (excluding credits), thus showing an exhaustive division of property to be taxed.'

"This case was affirmed on appeal and approved by the Circuit Court of Appeals in *Fajardo Sugar Co.* v. *Treasurer*, 237 Fed. 195, 196.

"In the case of *Porto Rican & American Ins. Co.* v. *Gallardo*, 35 P.R.R. 842, it was decided that: 'It was the intention of the Legislature to tax tangible property or its representative in intangible property . . . a tax on the capital of the corporation as constituted

by its property.' In this same case, the doctrine was repeated that, not only in the case of natural persons but also where the tax is imposed directed on a corporation the exempted property must be deducted from the assessment; and, to that effect, the mortgage credits, promissory notes, and other credits were excluded from the assessment, considering that 'only the cash on hand could be taxed.'

"Subsequently, reconsidering the case of *Porto Rican & American Ins. Co.* v. *Gallardo,. supra,* the Supreme Court tried to vary the jurisprudence so firmly established as to the exclusion of credits from the payment of taxes, declaring that:

" 'Mortgage credits are not exempt from taxation in the absence of a showing to the effect that they fall within any of the classes specified in section 291(*m*) of the Political Code.'

"And the exclusion from taxation of certain mortgage credits belonging to a corporation was refused.

"This latter case was followed in *Porto Rico Coal Co.* v. *Juan G. Gallardo,* (1929), 39 P.R.R. 575,. where the court refused to exclude certain 'book-credits and personal credits' of a corporation, and, after citing the cases of *Ins. Co.* v. *Gromer,* 19 P.R.R. 856, and *Fajardo Sugar Co.* v. *Treasurer,* 22 P.R.R. 290, the case of *P. R. & Am. Ins. Co.* v. *Gallardo,* 37 P.R.R. 108, was followed, and it was declared:

" 'Stock certificates of corporations taken to cover credits against them can not be considered as bills receivable, and in the absence of evidence to that effect they are not exempt from taxation.'

"This suit motivated the intervention of the Federal Circuit Court of Appeals, for the First Circuit, which, on appeal, definitely established the doctrine in force in this island, and which exempts from the property tax the credits of all kinds and ratifies the jurisprudence established in *Union Central Life Ins. Co.* v. *Gromer,* 19 P.R.R. 856, and *Fajardo Sugar Co.* v. *Richardson,* 22 P.R.R. 290, for, when the judgment of our Supreme Court in *Porto Rico Coal Co.* v. *Gallardo, supra,* was reversed, it was held:

" ' . . . . The District Court . . . refused to exclude the credits. Section 290 of the Code (as amended by Laws 1904, p. 169) declares that book credits, promissory notes, and other personal credits are not personal property. The local courts in Union Central Life Ins. Co. v. Gromer, 19 P.R.R. 856, 866–867, and in Fajardo Sugar Co. v. Richardson, Treasurer, 22 P.R.R. 290, 298–300, properly, we think, have held that credits and accounts receivable are not taxable and should not be included in the valuation of corporations for tax-

ation under Section 317. The latter case was appealed to this court and in 237 F. 195, 196, this court said: ''Both the District Court and the Supreme Court of Porto Rico upon appeal gave due consideration to the questions of law, and agreed in the conclusion that, upon a proper construction of the provisions of the Code, the disputed items or 'credits' were not taxable. We find no reason for disagreeing with the judgments of the local courts as to the local law, and have no doubt that their construction of the provisions of the Code is correct.'' This court will always give due consideration to the construction of a local statute by a local court of last resort, but where, as in this case, it has already approved one construction of Section 317 by the Supreme Court of Porto Rico, it cannot, if appellate decisions are to serve any purpose, follow every new construction of this Section by the Porto Rican court. No adequate reason is presented here for reversing our former decision. . . . The local courts appear to have departed from their previous construction of this Section .in *France & New York Medicine Co.* v. *Reily,* 31 P.R.R. 617, and to have treated the tax assessed under Section 317 as a form of excise tax, but we think this was not a correct construction of this Section, and has not since been followed by the local courts. In fact this construction was rejected by the local Supreme Court in *Porto Rican & Am. Ins. Co.* v. *Gallardo, Treasurer,* 35 P.R.R. 842. Neither the case in 35 P.R.R. 842, nor *Porto Rican & Am. Ins. Co.* v. *Gallardo,* 37 P.R.R. cited in the government's brief, are inconsistent with the views expressed by the Supreme Court in 19 P.R.R. 856, and 22 P.R.R. 290. If the statute as construed by the Supreme Court of Porto Rico in the cases last cited, with the approval of this court, is not satisfactory to the people of Porto Rico, they have a Legislature with power to amend.'

''After the case of *Porto Rico Coal Co.* v. *Domenech, supra,* was decided by the Circuit Court of Boston, there was in the Supreme Court of Puerto Rico the case of *New Corsica Centrale,* v. *Gallardo,* 41 P.R.R. 665, where it was definitely decided that:

''There can be no question that this court decided in *Union Central Life Insurance Co.* v. *Gromer,* 19 P.R.R. 856, and in *Fajardo Sugar Co.* v. *Treasurer,* 22 P.R.R. 290, that following the statute, personal credits could not be taxed. The Gromer case decided that credits secured by mortgages were primarily and fundamentally still credits and hence could not form part of the personal property as defined in Section 290. The Fajardo Sugar Co. case decided essentially that advances to farmers were credits and hence expressly ex-

cluded from the definition of property as set forth in Section 290. Therefore, we feel bound to hold that the assets in the present case were credits as defined in Section 290 and could no more be considered property than the credits in either the Gromer or the Fajardo Sugar Co. case. . . . We are quite satisfied, however, that the former cases would have prevailed if our attention had been fixed on Section 290 of the Political Code. By reason of the manner of the presentation of the questions involved the court was momentarily oblivious of Section 290 and its previous interpretation. . . . The Circuit Court of Appeals of Boston reversed the decision in the Porto Rico Coal Co. case *supra,* and necessarily decided that the certificates in question should be considered as credits. That court, moreover, reviewed our previous jurisprudence in *Union Central Life Insurance Co.* v. *Gromer; Fajardo Sugar Co.* v. *Treasurer, supra,* and the affirmance of the latter decision by the said circuit court and held in effect that these previous decisions were settled law.

"In virtue of the above analysis of the jurisprudence interpreting Section 290 of the Political Code, we are of the opinion that the capital represented by the personal credits whether secured or not, intended to be taxed by the Municipality of Ponce in the ordinance attacked, are exempted from all assessment and taxation by the insular government, and this being so, the Municipal Assembly of Ponce lacks power to impose said tax in accordance with Section 46 subdivision *b* of the Municipal Law, *supra,* which expressly provides that the municipalities may tax personal or real property within their municipal district, provided said properties are not exempted from taxation by the laws of the United States, or by some law of the Legislature of Puerto Rico. . . . "

Although the reasons and conclusions of the trial judge, Mr. Todd, are sufficient to affirm the judgment appealed from without the necessity of new citations and further arguments, we will take the liberty, however, to state some additional reasons and to explain the meaning and scope which must be given, in our judgment, to certain jurisprudence cited by the attorneys for respondents.

In accordance with Subdivision 4 of Section 26 of the Act establishing a local government for the municipalities of Puerto Rico, approved in 1928 and amended in 1931, one of

the powers expressly granted to a Municipal Assembly subject to other provisions of said act is the following:

"4. The levying of reasonable taxes and excises within the jurisdictional limits of the municipality."

Section 46 of said act enumerates the sources of Municipal income and, in its Subdivision *b,* states that this income will consist of—

"the proceeds of any tax on real and personal property in the municipal district levied under proper authorization of the Legislature; *Provided,* That such property is not exempt from taxation by the laws of the United States or by any law enacted by the Legislature, in force in Porto Rico."

After specifying in detail the sources of income, said Section states in its Subdivision *f:*

"Any other impost, excise or tax levied by the municipal assembly in the manner provided for in Section 26, paragraph 4 of this Act, provided the object or matter of the tax, excise or impost has not been the object or matter of any federal or insular impost, excise or tax."

In our judgment the law is clear. Subdivision *b* of Section 46 of the Municipal Law, when authorizing the municipalities to tax personal and real property, imposes certain limitations, and one of them is that said property be not exempt from taxation by Act of the Legislature, in force in Puerto Rico. Thus, according to Section 290 of the Political Code the capital represented by personal credits, whether secured or not, is not subject to taxation; therefore, the Municipal Assembly of Ponce lacked authority to tax property which a law in force, passed by the Legislature, has exempted from taxation.

The Legislature approved the municipal law in 1928 and the amendment to the same in 1931, with full knowledge of the scope and meaning of Section 290 of the Political Code and its interpretation by this Court. There is no basis in this law for the conclusion that said legal provisions of the

Political Code have been impliedly repealed. On the contrary, it is expressly declared that the municipalities can not tax property exempted from taxation by a law of our Legislature. This ordinance of a local nature can not repeal a law of a general nature which has fixed the policy of the state for a period of three decades and has expressed the intention of our Legislature in declaring that the personal credits are not subject to taxation. If our municipalities had authority to levy these taxes, the case may arise that the same property taxed in certain municipalities would be in others free from taxation, and it can not be supposed that this was the intention of the Legislature. The same reason which the Legislature had not to consider as personal property subject to taxation the book-credits, promissory notes, and other personal credits, exists to compel the municipality to follow the same conduct in adopting its legislation.

Respondents cite McQuillin as authority to support their contention that the municipality of Ponce has power to impose the tax objected to. The citation from McQuillin which we transcribed supplementing it, from Volume 6, page 271, of his work "Municipal Corporations," reads:

"Such taxing power so delagated may be only a part of that possessed by the state or may be limited in any way, but if the power so delegated is not limited, it includes all the taxing power possessed by the state, so that the municipality may tax all property within its jurisdiction without regard to whether it is taxed by the state."

This criterium is based in the case of *Woodall* v. *Lynchburgh,* 100 Va. 318, 40 S.E. 915, which is the only case cited by McQuillin in support of said doctrine. Neither the words of the author nor the conclusions of the Supreme Court of Appeals of Virginia, support the theory that a municipality can tax a property exempted from taxation by the laws of the state.

• Cooley states with greater preciseness and clearness the opinion of the Virginia Court. In Vol. 1, pages 290 and 291 of his work "Taxation," said author states:

"Power given in general terms by a charter to tax all property within the municipality does not authorize a tax upon property which is exempted by the general laws relating to all taxes; . . . . but if the legislature confers upon a municipality the general power of taxation, it grants all the power possessed by itself in respect to the imposition of taxes, and the municipality can tax property not taxed by the state, where now expressly exempted."

In support of this opinion Cooley cites the same case of *Woodall* v. *Lynchburgh, supra,* cited by McQuillin, and also the case of *Newport News & O. P. Ry & Elec. Co.* v. *Newport News,* 100 Va. 157, 40 S.E. 645, decided also by the Supreme Court of Appeals of Virginia. In this last case the municipality was given the power to raise the funds deemed necessary to cover its expenses by taxing the property within the limits, in the manner possible in accordance with the laws of the state and of the Congress of the United States. The city of Newport imposed a certain tax on the city street cars. There was no law of the state preventing such a tax. Referring to the powers of the municipality, the Virginia Court stated as follows:

"This language is substantially the same as that found in the charters of other cities of this commonwealth, and has been repeatedly construed and held to confer upon the city council general powers of taxation, including all persons and subjects of taxation, except only as it may be limited by the laws of the state or of the United States."

The court ends its opinion with these words:

"Upon the whole case, we are of opinion that the ordinance complained of is not in conflict with the constitution and laws of either this state or the United States, but is a legitimate exercise of municipal power."

In the case of *Woodwall* v. *Lynchburgh, supra,* claim was made of a sum paid for a license required from a person to perform the business of work agent. It was alleged that plaintiff had paid to the state $25 for the privilege of performing the same business and that the municipality had

required from him payment of $500. It was further alleged that the ordinance authorizing this tax was excessive, oppressive and unreasonable, its purpose being to prohibit the business and not to raise funds for the municipality. The Virginia Court, in deciding the question presented, stated, among other things, the following:

"The ordinance complained of was passed in pursuance of the authority vested in the city by chapter 8, sec. 5, of the Revised Charter of Lynchburg (Acts 1895–96, pp. 213, 214). This language has been repeatedly construed and held to confer upon the city the general power of taxation, except only as it may be limited by the laws of the state or of the United States, and to include all powers and subjects of taxation. This legislative grant of power to the city council of Lynchburg is without limitation as to the amount of tax to be imposed. That matter is left solely to the discretion of the council."

The court then mentions some principles on the power to impose taxes, which corresponds only to the legislative power, and which should not be invaded by the courts of justice, citing Marshall, Cooley and other authorities in support of its conclusions.

As it will be seen, the Supreme Court of Virginia although admitting that the municipality has the same powers that the state to levy taxes when this power has been granted in general terms, establishes the principle that this power may be limited by the laws of the state or of the United States. There is no doubt that the state, which grants the authority has the power to limit it, and if there is a general law which exempts from taxation certain property, it is reasonable to assume that this expression of the will of the legislature constitutes a limitation on the power of the municipality. The Virginia Court concludes that the municipality, in accordance with the powers granted to it by its organic act, may levy taxes within its jurisdiction on properties *not withheld from taxation by the laws of the state, whether they are taxed by the state or not.*

McQuillin, at Volume 6, p. 290 of his work on Municipal Corporations above cited, states:

"In the construction of the grant of any power to tax, made by the state to one of its municipalities, the rule accepted by all the authorities is that it should be with strictness. A citizen cannot be subjected to the burden of taxation without clear warrant of law. Therefore, 'statutes authorizing the levy of taxes are to be strictly construed; they are not to be extended by implication, nor is their operation to be enlarged so as to embrace matters not specifically pointed out, though standing upon a close analogy.' The judicial construction should be in keeping with the natural and probable legislative purpose, and avoid conflict, and harmonize all the applicable provisions of the law on the subject, if possible.

"If the authority of the municipality to tax is doubtful, the doubt must always be resolved against the tax. In case of doubt, courts sometimes give weight to the interpretation adopted by the executive department of the state which is specially charged with the duty of construing and effectuating the several provisions of the law bearing on the subject. The reasonable presumption is held to be that the state has granted in clear and unmistakable terms all that it has intended to grant, and whatever authority the municipal officers assume to exercise, they must be able to show a warrant for it in the words of the grant.

"As said by that eminent jurist, teacher, and text writer, Judge Cooley, the rule of strict construction of statutes as to the purposes for which municipalities may levy taxes, 'limits municipalities, in the levy of taxes, strictly to the ordinary purposes for which such municipalities are accustomed to make levies. The customary grant does not go a step beyond this, because it cannot be supposed that in giving the customary authority the legislature had any but the usual and ordinary objects of local taxation in view. . . . The mischief of a strict construction is easily obviated by the legislature; but the mischief of a liberal construction may be irremedial before it can be reached.' "

In the case of *Johnson Home* v. *Village of Seneca Falls*, 37 App. Div. 147, 55 N. Y. Supp. 803, the court said:

"A village has no inherent power to impose taxes on persons or property, and possesses only such power of taxation as is clearly conferred by statute (2 Dillon Mun. Corp. [4th ed.] Section 763);

and in case the policy of the State, as shown by its general statutes, is that certain property shall not be subject to taxation, a village charter which in general terms authorizes the taxation of all property within the village for municipal purposes will not authorize the taxation of property exempt by general laws relating to all taxation, for a grant of power in general terms to a municipal corporation to tax property within its borders does not confer power to tax property exempt from taxation by general laws. The provisions of the charter of the village of Seneca Falls which relate to taxation are very general in their terms, and do not evince an intention on the part of the Legislature to confer power on the municipality to tax property exempt by general laws.''

In *Hyattsville* v. *Chesapeake & Potomac Tel. Co.*, 131 Md. 589, 103 Atl. 133, the organic act of the town authorized the assessment for tax purposes of all property in the town whether real, personal, or mixed. In this case the Court of Appeals of Maryland said:

"If the contention of the appellant be correct, then it can still assess churches, hospitals, and many other things which the Legislature has seen proper to exempt. The charter can have no such meaning; it only means all such property as is under the General Laws taxable. . . . The Legislature adopted a general plan for the taxation of corporations by the act of 1896 and subsequent legislation amending or adding to that, and never intended municipalities to interfere with that plan when it used the general terms referred to.''

In the case of *Mayor etc. of Wilmington* v. *Tower Hill School Ass'n.*, 112 Atl. 442, the Supreme Court of Delaware stated as follows:

"Because, as was said in the case of *City of New Orleans* v. *Canal & Nav. Co.*, 36 La. Ann. 396, the exemption is unlimited, therefore, extends to all taxation whether state, county or municipal. The reason for which the exemption was accorded by the state is equally strong in favor of a similar exemption from municipal taxation. The general law fixed the policy of the state in respect to the taxation of school property, and such policy could not be changed or departed from except by general law.''

There is no necessity to accumulate jurisprudence to decide the instant case. As we have already said, the municipal law is very clear. Our municipalities can not tax property exempted from taxation by the laws of the United States or by some law in force of the Legislature of Puerto Rico. Respondents maintain that the amended ordinance provides that the tax will be imposed only on capital not exempted or taxed by the federal or insular laws and that until the ordinance is put into effect and the claims for exemption are made and decided against petitioners, they can not make use of the writ of certiorari. The truth is that the capital represented by loans, promissory notes and other negotiable instruments, or credits of some kind, whether secured or not, is subject to taxation according to the ordinance and that petitioners have a right to request and obtain that they be excluded from the menace to their credits. It is true that the ordinance taxes the capital not exempted from taxation; but if this capital is represented by loans, promissory notes and other negotiable instruments which are exempted, the reasonable consequence is that said ordinance lacks a basis and is ineffective, since it does not accomplish any purpose. The purposes of the Municipality, however, tend to put said ordinance into effect, for otherwise it would not have been approved and a judicial declaration of its nullity is necessary.

The judgment appealed from must be affirmed.